Good morning, your honors. My name is Robert Goldberg. I represent Luke Gatlin, who is the defendant below and the appellant herein. I've asked the clerk to reserve four minutes for rebuttal, if that meets with your honor's approval. That's granted. If you could raise the microphone just slightly, please. The thing in this case, initially it looks in this case as if you fit squarely within the Ubilis case that came to our circuit from the V.I. The problem is that in the V.I., it's presumed that you have a right to carry a gun or it's legal unless shown otherwise. Delaware is just the opposite. It's presumed that you don't have a right to carry a gun unless you can prove you have a license. And that's the Lively case, which takes off from Modesto. How do you get around that? Well, there's a couple things about the, I guess, Ubilis case. I call it Ubilis. In that case, in the Virgin Islands, and I cited in the briefs, the law seems to be pretty much the same in terms of what you're allowed to do. But the interpretation of the law apparently appears to be different. There is no Lively case in the Virgin Islands. In the V.I. And Judge Becker might have taken, in taking a little bit of license in Ubilis as to kind of what everybody does in the Virgin Islands with their guns at fairs. And having clerked for Chief Justice Herman, as I did, he didn't, you know, there's not much nuance. It's right in front of you. There's a presumption that you don't, you cannot have a gun unless you have to prove that you have a license. So how do you get around it? Well, the Lively case is more a case about burden of proof once you end up at trial. It's not really on the street, this is what your standard is. And there's something else about the Ubilis case that I think I have to bring up to the court. Whether there's a presumption that it's okay or not okay to have a gun, what the court said in Ubilis was that there was no evidence that the person with the gun, Ubilis in that case, posed a threat to anybody. And it's the same standard that if you apply that standard here, you come up with the same conclusion. Here, Mr. Gatlin had a gun, but there's no, there's absolutely no evidence that he posed a threat in any way, shape, or form. But the crime wasn't causing a threat. The crime is possession of a firearm. And once we have the reliability of the tip conceded, doesn't that provide sufficient basis for the officer where such concealed possession is a presumed felony to do what he did? What's an officer to do? Do you have to go and stand and wait and see if the guy looks shifty or does something? That's a curious point too, Your Honor, because under Terry, the person must be armed and dangerous. And we're using the disjunctive. And so you've got evidence that he's armed. You've got evidence that he's committing a crime. Well, if I'm armed, am I not, am I dangerous? That's... To a police officer. Let's say I have drugs. I'm not armed and dangerous. Let's say I have, you know, firecrackers. But if I have a gun on my person and there's a police officer who approaches, should the police officer process it and say, gee, the person's armed? Or don't they have a right, based on our case law, to think that the person is dangerous because guns are dangerous and that's the whole basis. You can stop and do what you need to do for your safety. There's two points here. A, guns are legal in this country in many ways under the Constitution. Having a gun does not necessarily indicate dangerousness. In this case, there was three minutes before the police responded to this scene. And in those three minutes, the police had their confidential informant on the phone. You know, they only had one piece of information, that the man had a gun, that my client had a gun. They didn't know it was loaded. They didn't know if he'd committed a crime. They didn't know if he was about to commit a crime. All they had was that one little piece of evidence. And they could have asked, they could have asked this informant, what's he doing? Is that your argument that every time that the police have a confidential informant's tip that someone is carrying a firearm that they have to investigate further? In other words, that they cannot act on the informant's tip? Well, they did both, Your Honor. They acted because they responded to the scene, but they had three minutes that they could have investigated and found out something. Supposing it was not a confidential informant's tip but an anonymous tip. Supposing somebody goes up to, for example, Officer Cannon and says, that guy over there I know has a gun. Doesn't the officer have, in Delaware now, the right to stop and investigate further? Well, the question is, he certainly can ask questions. The question is whether he can put that person on the ground, handcuff them, and search them based on that anonymous tip. That's another issue. You note that in a footnote. You really don't brief the issue of the handcuffing. It's interesting that the one person here who happens to come on the scene is Probation Officer Cacannon, right? Yes. Along with Officer Birch or Detective Birch. Yes. And Cacannon is this particular individual's probation officer, is he not? No, he's not. He's not? No. But he knows him. He knows it's Gatlin. He recognizes him after he's handcuffed him and flips him over. So he had seen Gatlin before. And so the only thing, so let's say, for example, if he had walked up and said, oh, Gatlin, it's you. Now, somebody's reported that a guy that's dressed just like you with a Cubs hat and whatnot has a gun on him. Do you have a gun on you? Do you mind if I pat you down? Well, that wouldn't be wrong, would it? No, not at all. So the only difference is that they come and they cuff him and put him on the ground before they check for the gun. Before they know who he is also. Before they know who he is. Yes. Although it's almost very shortly thereafter that they realize, oh, this is Gatlin. And so maybe they acted too, one could argue they acted too quickly. But does it really make any difference? Let me say why it does make a difference. This is Mr. Gatlin standing in front of a convenience store. He's talking to a lady in a red SUV. And the police come and, you know, they have their guns drawn. They put him on the ground. They handcuff him. But the difference here is this is not an anonymous tip case. I understand that. I understand that. But if they had gotten more information, what if they had, flip it around, what if they had found out that he actually was a dangerous criminal? What if he had said to somebody, the police will never take me alive? And I've seen those cases. Are they really going to come out with guns drawn in that kind of a situation with people all around, somebody talking to them? And this man is desperate. I'm a little concerned about what you say, get more information, because sometimes police just don't have time to get more information. So what if they do get a tip that is from a credible or reliable informant, but it's on the scene, it's not over the phone? That's an excellent point, Your Honor. And here they did have the time. But if they don't have the time, then they have to act on what they know. But in this case, with a search, that's really a proxy for a full search. So you mean because it was done on the phone and they had about three or four minutes, it's okay? But if it's done right at the intersection of Market and Main Street, it's not okay to respond to an anonymous tip of somebody carrying a gun in Delaware? The police always have to act on the information they have. I'm sorry, go ahead. I'm sorry. I'm a little confused by your argument. I thought your argument was the fact that he had a gun, even though it was a presumed felony in Delaware, is not enough on its own for a stop and frisk. But now you're sounding like your argument is when you get a tip like this, you're not allowed to come with your guns drawn and handcuff a person because that is excessive force. I don't think you made that argument in your brief, did you? I certainly made that point several times that that's what happened to him and that that was more than what was required. I thought I did. But the point is not just what happened, but that that in and of itself was wrong, in effect was excessive force here. I don't recall that being in the brief. I can't point to it, but I do say over and over again that that's what they did. If a police officer in Delaware is aware that a person carrying a gun must have a permit and the permit is in affirmative defense, why wouldn't it be appropriate to approach on the basis of an anonymous tip someone carrying a gun or information that somebody at an intersection is carrying a gun? In other words, you have to get a permit. You have to get a license to carry. I've had a chance to look at what's required. You have to jump through quite a few hoops to get a permit to carry a gun. So police officers know not too many people in Delaware have licenses to carry guns. Not too many people in February at 730 at night leaning against a vehicle have a license to carry a gun. Isn't that sufficient grounds on which to stop somebody and do a pat-down search? I would say, Your Honor, A, that that's not what they claimed at the hearing. They only claimed that they had one piece of evidence, the tip. They didn't say that this was a suspicious person in a suspicious area and that therefore I don't believe he had reason to have a gun. It's factually unique. Usually there's something else, but factually it is perhaps a unique case in that just the one thing is all they had. All right, we'll hear from you on rebuttal. Thank you. Good morning, Your Honors. Seth Bosang for the government, and may it please the Court. Your Honors, I would focus in on the suppression issue and the government's position follows right along with Your Honor's questions that the Ubilis case is distinguishable. Part of the problem, the thing that doesn't feel right about this case is that they jump out of a car, don't even find out who the guy is. It turns out one of the officers knows the person, knows him almost immediately, do no checking and basically tackle the guy or close to it. Is that the way it's normally done in Wilmington by the police officers? That's not my understanding. I'm from Wilmington. I'm not aware of the normal practice. I mean 30th and Market, you know where 30th and Market is? Are you familiar with it? I'm not, Your Honor. 30th and Market is not a bad area. I mean it's not a great area, but it's not a bad area. It's not a high crime area. Your Honor, I would say that obviously the government's position is that there was substantial force here used, but that it was reasonable and for a number of reasons. First of all, only one of the officers drew his weapon. There were two officers that responded. It was, as Your Honor said, it was Officer Kananen and Officer Birch. Officer Birch drew his firearm. Officer Kananen ordered the defendant to the ground. The record, I think, indicates that the defendant complied. Officer Kananen immediately handcuffed the defendant. The problem you run into is what happened in the Brown case. I mean here they happen to have the right guy. The Brown case is up near 22nd or 23rd and Locust. The woman is being robbed. She tells a police officer. Some individual is walking down the street, happens to walk out of a commercial place, and it gets tackled practically, and they had the wrong guy. So don't you normally, isn't the normal thing is to walk up and to check things out before, in effect, you throw the guy to the ground and cuff him? Your Honor, I mean I think it's important to remember that, if I'm remembering the Brown case correctly, I do not believe that was a known informant tip. I mean here we have. No, the woman, the police officer did not know her. Right. So here we have a confidential informant that has, he has a personal relationship with the officer he called on his cell phone, a four-year, the record indicates, a four-year constant relationship where the informant's provided information leading to numerous arrests and convictions. But what does he say? He says the man has a concealed weapon. That's correct. We don't know whether it's loaded. We don't know whether the person is a police officer. That's correct. We don't know anything. Isn't the normal procedure to go and when you have a stop and frisk, you either ask questions or you stop and you frisk? Yeah. Again, I don't know what the normal procedure is, but the government's position is that what happened here was very reasonable under the case law. Basically the officers had information that there was a felony in progress. Carrying a concealed deadly weapon is a felony in Delaware. And so they have information that there's a felony in progress, that the individual is armed. It's a presumed felony, but without further information, you really don't know if it is a felony, because if the person was an undercover FBI agent or had a license, and a lot of people carry guns with licenses these days. The tip was not that Gatlin was a felon. The tip is that there's a light-skinned black male, Chicago Cubs hat, with a black jeans, black-blue jeans, I think is what he said, which doesn't make sense, but a black-hooded jacket. And he's at 30th and Market. With a gun. With a gun in his right front coat. Your Honor, perhaps it's best, I think this court in Valentine, which was another case about a tip where the individual is suspected of having a gun, the court said that diligent officers obviously have to investigate that kind of report. But the court also said that it would have been unreasonable to expect that officers would approach such an individual and not perform a frisk. So, you know, I think under Valentine. I don't think we take issue with that. I don't think we take issue with that. The question is to stop. Does the reliability of the tip figure into this? I think it does. I mean, obviously, I think that distinguishes this case from Brown. But I think. But isn't the crux of the issue whether the tip saying that someone is carrying a concealed weapon is enough for a reasonable police officer to suspect criminal activity is afoot? Well, certainly it's enough in Delaware to suspect that this person is committing a felony. What is it that specifically led Officer, is it Kinnanan? Yes, Your Honor. To believe that there was criminal activity taking place. It really was just the tip, the reliable tip from an informant that he has, obviously, a personal relationship with that this person had a concealed weapon. So you say that we should figure into the equation the reliability of the tip? Well, that provided a basis for the officer to reasonably suspect that what he was hearing was true, reasonably believe that. But the possession could have been just as lawful as it was illegal. It certainly could have been, but I don't believe that that is the standard. Obviously, cases. No, the Lively case says the burden is on the defendant to establish that he has a license to carry a concealed deadly weapon. So, I mean, Mr. Goldberg's point is that burden comes up later on. First question should be, do you have a weapon on you? And, I mean, if Kinnanan actually had done it, he would realize this was Gatlin. Gatlin was a felon and he can't have a weapon, then he would say, okay, do you have a weapon on you? And proceed that way instead of cuffing the person and then sort of working backwards from there. And, by the way, this has nothing to do with Valentine. Valentine's an anonymous tip. Late at night, high crime area, and the person ran away. I mean, this Valentine isn't even remotely close to this case. Well, Your Honor, again, I think the police had no choice but to investigate this tip. And the government's position is that first, obviously, that they were reasonable in the steps that they took, the force that they used. There's no argument that this transformed into an arrest. And, clearly, even if that was being argued under the factors this court analyzes, I don't think this would be an arrest. And this court has just very recently reaffirmed and stated repeatedly in other cases that the use of guns and handcuffs during a Terry stop is not per se unreasonable. It does not automatically transform. It depends on the circumstances, doesn't it? That's correct. The circumstances here are they don't know this person's a felon when they go up and force him to the ground. They have no idea until later on. They certainly do not know. And this is not a high crime area. I'm sorry. This is at 730 at night. I mean, it's not real late. I would note that it is in the record. I don't think there's anything in the record about whether or not it's a high crime area. But there's certainly in the record that there were a number of people around. I would argue that that adds to. At 30th and Market, there's usually a lot of people around. That's right. Or a fair amount. And, certainly, that adds to the potential for danger. I mean, certainly, this individual could have been a lawfully, a citizen with a permit and doing absolutely nothing wrong. But the standard's not whether they know, you know, obviously whether they know that's for certain or not. It's whether they reasonably suspect or have, you know, reasonable grounds to believe that this person is carrying a firearm illegally. But that's why they say, turn around, put your hands up on the top of the car, and they frisk him. Isn't that the procedure, even if there are people around? The police order the person to, you know, turn around, put your hands up on the top of the car, and he's frisked. Correct? I'm sure that, I'm certain that is a procedure that is used. I would argue that that's not all that much different than what happened here. I mean, obviously, he was ordered to the ground. And handcuffed. And handcuffed. But this all happened very quickly. It always does. What do you say provided the reasonable suspicion for the stop in the first place? Just the anonymous tip? Well, it wasn't anonymous. Oh, yes. I'm sorry. Yeah, the confidential informant. Yeah. Yes, your Honor. Again, this informant had a personal relationship with this officer, a four-year relationship where he provided numerous information in connection with investigations. Also, you know, provided a fairly detailed description of the defendant. The police confirmed that within minutes when they arrived. But for the reliability of the tip, there would not have been reasonable suspicion. But for this person having provided information for a four-year period, there would not have been reasonable suspicion to stop Gatlin. Obviously, that's by far the biggest factor, the fact that it's a reasonable suspicion. I believe it's also in the record that. So if we take out of the equation the reliability of the tip, then you don't have a basis for the stop. I mean, the tip was the basis for the stop. Did the tip contain sufficient information? Should the officer have said, well, okay, so he has a gun. Does he have a license? Is he a felon? Who is the guy? Who is this guy? Yeah. If he has a personal relationship with this informant, shouldn't he have asked more time? How did you come to know this information? Well, I mean, you know, the record is not perfect, obviously, but I think it's reasonable to infer from the record. I mean, the testimony was this individual would call the officer when he had information about a crime and that the officer would pay him if the information bore out. So, you know, I would certainly argue that it's a very strong inference that when he says, I'm calling about a man with a gun, that he doesn't, you know, doesn't think this man is a police officer or has a license or anything like that. What if, given the same information, the tip was, I know a fellow at 30th and Market wearing a Cubs hat, et cetera, et cetera, and he has Vicodin in his possession? Can you do the same thing? Does that provide, I mean, it's a prescription drug. Right. I mean, you don't usually carry a prescription around, just like you don't, I suppose you should carry a license to carry a gun in your possession, but let's say it's a prescription drug. Does that give the police officers reasonable suspicion to believe there's a crime taking place? I would argue that that is a much closer call. You know, I don't think that there's any presumption. I'm not aware of any presumption with respect to, you know, prescription drugs like that, whether that's presumed to be illegal. Like in Delaware, you know, possession of a concealed firearm is presumed. Why would a gun be different? We're still talking about criminal activity afoot. Correct, Your Honor. I would just, I think in Delaware, as in, you know, other jurisdictions, it is presumed, the burden's on the individual to come forward with a license. Otherwise, it's presumed that he's, you know, violating the statute. With respect to the Vicodin, you know, I don't know if there's a similar presumption that would apply in that case. The person here is, was known to the confidential informant. What if the confidential informant calls Leary and says, I just was up near Market and 12th, Market and 10th, 11th, near the Hotel DuPont, and I see a white male individual who flipped his jacket back and he has a gun on him. What would happen there? They're not going to go up and tackle this guy, are they? Again, well, the officer did testify at the hearing that he would have done the exact same thing under the very similar facts that you're describing. Do you really believe that? Your Honor, I do. I mean, there's a former high-level government official who normally carries a firearm with him, and I can guarantee you, as they say in Louisiana, they are not going to go up and tackle this guy and cuff him and then see if he has a gun on him and then see if he has a license later. Again, just not to equivocate, the record doesn't indicate that he was tackled, but with respect to whether they would investigate that tip, I think certainly. And the officer did testify that he would. This is the procedure he uses when a man with a gun. Now, Your Honor, maybe if the tip was he has a gun in a holster in his jacket, whether the officer would be familiar and think that is a police officer and perform a different procedure as opposed to a gun in his pocket, in his front jacket pocket, I don't know. But certainly the tip here, you know, the government's position is that was a sufficient indication that there was a crime in progress. And again, the frisk, the ---- That there's a crime in progress? Well, correct, carrying a concealed deadly weapon. Remember, the burden is on the defendant to establish that she has a license to carry a concealed deadly weapon. That's all it says. The burden is on you to show that you have a right to do it. Correct. But that's, in effect, part of the investigation. The question here is how do you go about that investigation in part? And I really find it hard to believe that they would investigate at 11th and Market with a white male the same that they would do with an African American at 30th and Market. Well, I think that the officer's choices in this situation are, they don't have a lot of choices, quite frankly. You know, obviously they have to be concerned with their safety. And, you know, if they were to just approach an individual and say, you know, excuse me, sir, do you have a gun, they're taking a risk. Judge Mandel has pretty much said it. Sir, we've got a report that you've got a gun. Could you place your arms up, please? I just wanted to frisk you. And then he would say, no, I have a license to carry the gun. I do have a gun on me. And he would produce a license and it would be it. Or they would know, in my case as the high government official, they would know who this guy is. Right. But I don't know. It seems like the law should be the same for all, should it not? I think it should. And the officer testified that he performs this procedure. I believe the record is that he has done this many times in the past, and he does it every time he has a tip about a concealed firearm. They put somebody on the ground and cuff him. That's correct. Speaking of the law should be the same, if we were to agree with you, reasonable suspicion would mean one thing in Delaware and mean something different in the VI. How would you reconcile the two? I don't think that reasonable suspicion would mean something different. It would just be what is illegal. Well, we're talking about suspicion to stop somebody because you believe there's criminal activity taking place, and it seems like we're going to end up with two different standards if we adopt your position. Well, you may end up with two different results, but I think the reasonable suspicion standard would be the same. But the reason why you'd have different results is because one thing is – Well, there was no reasonable suspicion in the Virgin Islands because individuals there have a right to carry or are presumed to have a valid right to carry a gun. That's correct. I mean, saying that the burden is on the defendant, does that necessarily equal presumption that anyone with a gun is committing a crime? I think it does, Your Honor. And, you know, this court has – with a firearm to be improper. And, you know, obviously Delaware has made a different choice. You know, the Delaware and Virgin Islands statutes look similar, but as Your Honor noted, Delaware Supreme Court since the early 80s has interpreted the statute in this fashion. Is that the difference? There's a presumption in Delaware that if you have a gun that it's illegal? That's correct, Your Honor. There's no presumption in the Virgin Islands? There's no presumption in the Virgin Islands. The presumption – Has anybody followed Ubiles or Ubiles? Any other court followed that case? Your Honor, I don't know if I've researched that enough to give you a definitive answer, but I'm not aware of any other jurisdiction that has the type of presumption that the Virgin Islands has where this issue has come up. I know that in Valentine that this court said in New Jersey has a similar presumption as Delaware. The court noted the presumption but didn't decide the particular question. That's probably before the court. All right, so the way you want us to decide this case is that in Delaware it is presumed that if you have a gun in your possession it is illegal, and that gives a police officer reasonable suspicion to believe there's criminal activity going on and we can stop you. Is that it? Under these facts – But that doesn't factor in the reliability of the tip. Yeah, assuming that the tip is reliable, that the officers have reasonable suspicion that it's true that there is a concealed firearm, then they have reasonable suspicion that there's something illegal afoot and obligated to investigate it and obligated to take safety measures. That sort of begs a dumb question. What if the firearm isn't concealed, so you're just walking on the street with a gun in your hand? There's no burden then. Lively doesn't apply, right? I don't know. I know in Delaware you can have a permit to carry a concealed firearm. I don't know if you can have a permit to carry an open firearm. Well, maybe open firearm is not illegal. But here we have the firearm in the right pocket, right? That's correct. That's the tip? That's correct. All right. All right, I have no further questions. All right, thank you. Thank you very much. Your Honor, hit on, Judge Ambrose, hit on the same question that I asked Officer Canadian at trial. I said, do you do the same procedure every single time? And it's on A43 in the transcript. He says, yes, every single time we would do the same procedure. And I said, would you do it at the Hotel DuPont if the guy's wearing a coat and tie? And he said, yes. And I'm as skeptical as the Court is about whether or not that's true. I've got to live with that as the testimony because I can't, I don't know. Can't prove otherwise. I can't prove otherwise. But I'm entirely skeptical about that also. It's hard to believe that that's the procedure. It's hard to believe that the Court would condone a procedure like that on just that one tip. Nothing else. No evidence or no testimony about someone committing a crime. No evidence that this person is going to do this, that this person had done that. Well, wait a minute. How about Mr. Bosong's point that it is presumed on information that somebody has a gun in possession that that gun is being possessed illegally? In Delaware. You disagree with him on that? Well, in terms of the Lively case, I do disagree, Your Honor. I think the Lively case is really, it's a burden of proof case at trial. At trial, if you've got a defense, show it. And the Court, you know, it's based on a practical consideration. There can be a hundred different ways that you can justify having a gun. It would be incumbent upon a defendant to do that if it comes up at trial. And all the Court says, if you've got a license, show it to me, show it at trial, and you're okay. But, I mean, for purposes of a stop, why can't a police officer say, it's more likely than not that you have that gun in your possession illegally? And given the importance of public safety, I think I will stop you. There are a whole slew of cases, Your Honor, where – And do a pat-down, sir. Okay. Where the police officers have said, I'm in a high-crime area, I'm looking at – you know, I'm looking at – I'm looking at someone who is acting suspicious, running away, doing this, doing that. And you get all these factors together, and then you say, in that case, it's more unlikely that – it's more likely than not that this gun is illegal. Here, all you have is the bare – the bare knowledge that there is a gun. And the other thing is, in a gun case, where you do a frisk, this is a proxy for a real search. You don't have to do a real – in any other case, if you frisk somebody and you find no guns, then you can – you know, then you do the rest of the investigation. Is there any case supporting your argument that the technique used here was unreasonable? Yeah. All the cases say that you should do a search in – that you should do an investigation in the least intrusive manner possible. But what case supports you here? The Territory versus Ohio. And all its progenies say the same thing. When you do a search, you do it in the least intrusive manner possible. But isn't the focus on the grounds for the stop in the first instance rather than the technique that was used by the police? Yes. Whether appropriate or not? I think you have to look at the whole – the whole circumstance, yes. Is there grounds for a stop? Is there grounds for somebody to ask questions? Maybe. But then you go to the next part, which is an analysis of, did the police use the least intrusive means possible? And you can't conclude otherwise that they didn't. I mean – So your view is that the police should have inquired further and learned more information about whether Gatlin had the gun lawfully or not. Especially when the search that they performed is actually a proxy. Is there a way that, in Delaware, you could find out at 7.30 at night whether somebody has a lawful license to carry a gun or not? I would never suggest that, Your Honor. My suggestion was that they could have asked the informant more information about what was going on. They would have said to the informant, do you know if he has a license for that gun or not? Actually, it wouldn't make any difference here because he's a felon. They would have found that out immediately. That's something they could have found out but didn't, yes. Okay. All right, thank you. Thank you. Thank you. Thank you. Thank you.